# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHAD MICHAEL ALTLAND,** | : | **CIVIL NO. 1:14-CV-1613** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Chad Michael Altland ("Altland"), an inmate currently confined at the State Correctional Institution at Benner Township ("SCI-Benner Township"), commenced this action on August 18, 2014 pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as defendants are Secretary for the Department of Corrections Wetzel, former SCI-Benner Township Superintendent Lamas, Dental Hygienist Kotzur, Department of Corrections Chief of Dentistry Angelici, SCI-Benner Township Corrections Health Care Administrator Bopp, the Dental Department, (collectively, the "corrections defendants"), physician Andrew Dancha, physician's assistant Maria Leahy, and physician's assistant Laura Dunkle, (collectively, the "medical defendants").[1] (Id.) Before the court are two motions (Docs. 17, 26) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the corrections

---

[1] The complaint also names as defendants Dr. Joseph Kaczor and Dr. Dole. (Doc. 1 at ¶¶ 6, 14). As discussed herein, these defendants will be dismissed from this action pursuant to Federal Rule of civil procedure 4(m).

defendants and the medical defendants, respectively.  For the reasons set forth below, the court will grant both motions.

## I.  <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see</u> <u>also</u> <u>In re</u> <u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## II.    **Allegations of the Complaint**

The basis for Altland's claims stem from the medical and dental care provided to him at SCI-Benner Township.  (Doc. 1, pp. 3-11).  Specifically, Altland alleges that the defendants were deliberately indifferent to his serious medical needs while housed at SCI-Benner Township.  (Id.)

On August 20, 2013, Altland alleges that he underwent dental surgery performed by defendant Dr. Kaczor to remove his bottom, left wisdom tooth.  (Id. at ¶ 16).  Altland explains that he was not administered general anesthesia for the procedure, rather he received local anesthesia.  (Id.)  Altland alleges that he suffered from "significant pain" for two (2) days after the surgery.  (Id. at ¶ 18).

Altland asserts that he was prescribed Motrin 600 mg, but continued to experience pain.  (Id. at ¶ 18).  Due to the alleged pain, Altland submitted a sick call request and was seen by a dental hygienist on August 23, 2013.  (Id. at ¶ 20).  The

dental hygienist believed that Altland's pain was caused by a dry socket and therefore packed the wound with gauze. (Id.)

On August 25, 2013, Altland again requested medical attention and allegedly was informed that he would be seen by the medical department upon paying ten dollars ($10.00). (Id. at ¶ 21). Altland further alleges that the medical department informed him that they were unsure if they would be able to treat his pain. (Id. at ¶ 21). On August 26, 2013, Altland was treated by a dental hygienist who advised him that everything appeared normal, and therefore declined to provide additional pain medication. (Id. at ¶ 23).

On August 28, 2013, Altland was treated by a dentist and was advised that everything looked normal. (Id. at ¶ 24). Later that evening, Altland's lip allegedly went numb. (Id. at ¶ 25). Altland pressed the call button in his cell to contact the medical department. (Id.) Staff from the medical department arrived at Altland's cell, examined his mouth, and informed him that the numbness was not normal and they would contact the medical department in the morning. (Id.) Altland was next seen by a dental hygienist two days later, on August 30, 2013. (Id. at ¶ 27). The dental hygienist again determined that Altland's pain was caused by a dry socket and packed the wound with gauze. (Id.)

On August 31, 2013, Altland allegedly lost movement on the left side of his face and experienced facial drooping. (Id. at ¶ 29). The next day, Altland requested medical attention, but was informed that he must first file a sick call request. (Id. at ¶ 29). Altland complied, and was treated by the medical department for a dry socket

on September 2, 2013. (Id. at ¶ 31). Altland alleges that he filed a grievance later that day regarding the medical care provided as of that date.[2] (Id. at ¶ 32).

On September 3, 2013, Altland was again treated by the dental department. (Id. at ¶ 33). The dental hygienist informed him that she was no longer capable of handling his dental condition. (Id.) The following morning, Altland was treated by a dentist, underwent an x-ray, and was advised that his jaw was not broken. (Id. at ¶ 34). The dentist opined that Altland's nerve may have been cut or scraped during the prior surgery, causing nerve damage. (Id.) The dentist further opined that the damage "may or may not be permanent", and he prescribed pain medication. (Id.)

Altland was allegedly summoned to the medical department on September 6, 2013 to be treated by defendant Dr. Dancha. (Id. at ¶ 35). Dr. Dancha explained that Altland may suffer from Bell's Palsy, and he prescribed antibiotics. (Id.)

On September 9, 2013, Altland was again summoned to the medical department to sign a consent form to undergo HIV testing, the results of which were negative. (Id. at ¶ 36).

On September 11, 2013, Altland was seen by the dental hygienist to have his teeth cleaned. (Id. at ¶ 37). Altland was also treated by an oral surgeon who

---

[2] In a response dated September 10, 2013, Altland's inmate grievance was denied. (Doc. 1 at ¶ 40; Doc. 1, Attach. C, Initial Review Response). Altland avers that he appealed the denial of this grievance to the Facility Manager, Marirosa Lamas. (Doc. 1 at ¶ 41). The Facility Manager reviewed the initial grievance, initial grievance response, and Altland's appeal, and ultimately upheld the Grievance Officer's response. (Id. at ¶ 47; Doc. 1, Attach. E, Facility Manager's Appeal Response). Altland states that he grieved this decision to Final Review, and the Chief Grievance Officer upheld the Facility Manager's response. (Doc. 1 at ¶ 57; Doc. 1, Attach. H, Final Appeal Decision).

allegedly stated that any nerve damage "over six months from [the] original injury will be permanent damage." (Id.)

The following day, Altland was treated by Dr. Dancha who explained that he and the oral surgeon agreed that Altland should be treated by a neurologist outside the prison. (Id. at ¶ 38).

On September 17, 2013, Altland was seen by the oral surgeon, defendant Kaczor, who advised Altland that his symptoms may be unrelated to the surgery. (Id. at ¶ 42). Altland underwent another x-ray, the gauze in his wound was removed, and the wound was stitched. (Id.)

On September 18, 2013, Altland alleges that he was denied pain medication because there was no prescription for him. (Id. at ¶ 44). Later that morning, Altland asserts that his sutures fell out and he was informed that he would be treated by medical the following day. (Id. at ¶ 45). Altland was seen by the dental hygienist the next day, September 19, 2013. (Id. at ¶ 46). The dental hygienist advised him that his wound would heal even though the sutures fell out. (Id.) Altland reported to the hygienist that he no longer had feeling in his lower left gum line. (Id.)

On November 7, 2013, Altland was treated by neurologist Dr. Wen Ying Wu Chen at a facility outside the prison. (Id. at ¶ 49). Dr. Chen allegedly informed Altland that he did not have Bell's Palsy, but he sustained nerve damage as a result of the wisdom tooth extraction. (Id.) Dr. Chen recommended an MRI and a follow-up visit in one (1) month. (Id.)

On November 9, 2013, Altland met with Dr. Dancha to discuss the recommendations of Dr. Chen. (Id. at ¶ 50).

Altland next met with Dr. Dancha on December 10, 2013. (Id. at ¶ 53). Dr. Dancha advised Altland that he believed an MRI would be ineffective, he prescribed Ibuprofen 600mg, discontinued Prednisone, and recommended treatment with a psychiatrist. (Id.)

Altland treated with psychiatrist Dr. Xue on December 13, 2013, who confirmed that Altland's psychiatric medication could not cause his symptoms. (Id. at ¶ 54).

On December 18, 2013, Altland filed a grievance related to alleged hearing loss in his left ear. (Id. at ¶ 55). On December 23, 2013, Altland was treated by a physician's assistant for his complaints of hearing loss and ear pain. (Id. at ¶ 56). The physician's assistant believed that the hearing loss was caused by an ear infection and prescribed ear drops. (Id.) Altland was treated again for his ear infection on January 2, 2014. (Id. at ¶ 58). At this examination, the physician's assistant determined that the ear canal was not irritated and the infection was cleared, though Altland continued to complain of ear pain and hearing loss. (Id.)

On January 9, 2014, Altland was treated by physician's assistant, defendant Maria Leahy. (Id. at ¶¶ 59, 60). Defendant Leahy opined that Altland's jaw and ear pain stemmed from a pulled muscle in his neck and she instructed him to perform stretches to help ease the pain. (Id. at ¶ 60). Altland requested that he be placed on a medical lay-in so that he would not have to go to work. (Id.) Defendant Leahy agreed, and placed him on a medical lay-in for the remainder of the day. (Id.)

Defendant Leahy continued Altland's pain medication at the same level, but declined to increase the medication. (Id.)

On January 15, 2014, Altland was transferred to the York County Prison for court. (Id. at ¶ 61). While at the York County Prison, Altland was treated by the medical department and prescribed Neurontin for his nerve pain. (Id. at ¶ 62). Altland asserts that the Neurontin helped alleviate his pain. (Id.)

Altland returned to SCI-Benner Township in March 2014. (Id. at ¶ 63). On March 13, 2014, Altland was treated by Dr. Dole and reported that Neurontin helped ease his pain. (Id. at ¶ 64). Dr. Dole nevertheless prescribed a different medication, Tegratol. (Id.) After five (5) days on Tegratol, Altland submitted a sick call request claiming that the medication was not providing relief. (Id. at ¶ 65). On March 20, 2014, Altland was treated by a physician's assistant who allegedly failed to change his medication. (Id. at ¶ 66). The following day, Altland was treated by the dental department due to his continued complaints of pain. (Id. at ¶ 67). The dentist placed him on a medical lay-in until he could be treated by a medical doctor. (Id.)

On March 24, 2014, Altland was treated by Dr. Dancha. (Id. at ¶ 68). Dr. Dancha explained that the prison no longer prescribed Neurontin. (Id.) He therefore prescribed Lyrica 100mg. (Id.) Altland states that after taking Lyrica for one (1) week, he "can finally say that he is getting relief. The pain is not completely gone, but it is much more tolerable for Altland." (Id. at ¶ 69). However, after three (3) weeks, Altland alleges that the Lyrica was no longer effective in treating his pain. (Id. at ¶ 70). Dr. Dancha therefore doubled the prescribed dosage. (Id. at ¶ 71). Altland asserts that the increased dosage eventually did not help his pain and

he requested that Dr. Dancha again increase the dosage. (Id. at ¶¶ 72, 73). Dr.

Dancha informed Altland that he would increase the dosage to 300mg on June 1,

2014, which was the maximum dosage he was comfortable prescribing. (Id. at ¶ 73).

Altland asserts that 300mg of Lyrica is not the maximum dosage available for

prescription. (Id. at ¶ 74).

Altland alleges that he requested copies of his medical and dental records,

but his request was denied. (Id. at ¶¶ 39, 43).

On August 18, 2014, Altland filed the instant action, seeking declaratory and

injunctive relief, monetary damages, and costs, for defendants' deliberate

indifference to his medical needs. (Id. at ¶¶ 79-84).

## III.   __Discussion__

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

### A.   Corrections Defendants' Motion to Dismiss

#### 1.   *The Dental Department*

As an initial matter, the court notes that the "Dental Department" is not a "person" subject to suit under § 1983.  <u>See</u> <u>Fischer v. Cahill</u>, 474 F.2d 991, 992 (3d Cir. 1973) (a department within a prison "may not be sued under 42 U.S.C. § 1983 since it is not a person"); <u>Stanley v. Delaware Cty. Prison, Medical Dept.</u>, No. 91-1169, 1991 WL 29928, at *1 (E.D. Pa. 1991) (concluding that the prison medical department is "clearly not a person for purposes of 42 U.S.C. § 1983").  Hence, the court will dismiss any claims against the Dental Department with prejudice.

#### 2.   *Deliberate Indifference to Medical Needs*

The court concludes that the allegations in Altland's complaint fail to establish a deliberate indifference claim against defendant Kotzur.[3]  The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-05 (1976).  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  <u>Natale</u>, 318 F.3d at 582 (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one

---

[3]  For purposes of this memorandum, the court will assume that Altland's allegations in the complaint against the "dental hygienist" refer to defendant Kotzur.

that is so obvious that a lay person would recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." <u>Id.</u> (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. <u>See</u> <u>Estelle</u>, 429 U.S. at 106; <u>Spruill v. Gillis</u>, 372 F.3d 218, 237 (3d Cir. 2004); <u>Monmouth Cty.</u>, 834 F.2d at 346.

Assuming *arguendo* that Altland's nerve injury and resultant pain represent a serious medical need, the court must determine whether Altland has pled a deliberate indifference to that need. The allegations against defendant Kotzur demonstrate that she provided adequate medical attention to Altland. (Doc. 1 at ¶¶ 20, 23, 27, 33, 37, 46). Defendant Kotzur treated Altland's dry sockets on at least two (2) occasions, packed his wound with medical gauze, and cleaned his wound. (<u>Id.</u> at ¶¶ 20, 27, 46). Moreover, during the course of Altland's treatment, the dental hygienist acknowledged that she was no longer capable of handling his dental

condition, and she promptly referred him to a dentist. (<u>Id.</u> at ¶ 33). Several of Altland's allegations against Kotzur claim that she denied him pain medication. (<u>Id.</u> at ¶ 23, 27). However, as aptly explained by the medical defendants, dental hygienists are not doctors and thus cannot prescribe prescription pain medication. (Doc. 18 at 8). Altland primarily appears to be dissatisfied with the care provided by Kotzur. Such claims simply do not rise to the level of a cognizable constitutional violation. <u>See</u> <u>Ham v. Greer</u>, 269 Fed. App'x 149 (3d Cir. 2008) (concluding that the prison dentists did not exhibit deliberate indifference to a prisoner's serious medical needs by not rendering the kind, or quality, of treatment that the prisoner would have preferred). Thus, the claims against defendant Kotzur will be dismissed.

### 3. *Respondeat Superior*

Defendants Secretary Wetzel, former Superintendent Lamas, Corrections Health Care Administrator Bopp, and Chief of Dentistry Angelici argue that Altland fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because Altland's allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 18 at 9-13). The court agrees.

Local government units and supervisors typically are not liable under Section 1983 solely on a theory of *respondeat superior*. <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury" complained of). It is well-established that:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Additionally, for purposes of Eighth Amendment medical claims, nonmedical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, nonmedical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

13

<u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004). Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 236-37 (citing <u>Durmer</u>, 991 F.2d at 69); <u>Garvey v. Martinez</u>, No. 08-2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); <u>Hodge v. United States</u>, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. <u>See</u> <u>Rode</u>, 845 F.2d at 1207.

Applying these constitutional benchmarks, it is apparent that, with respect to the non-medical defendants—Wetzel, Lamas, and Bopp—Altland's complaint fails to state a claim upon which relief can be granted. As to defendant Angelici, other than being listed as a defendant, there are absolutely no allegations against this defendant.[4] (<u>See</u> Doc. 1 at ¶ 9).

A review of the complaint confirms that there are no specific assertions that any of these defendants had any personal involvement in the purported violations of Altland's rights under the Eighth Amendment. (<u>See</u> <u>generally</u> Doc. 1). Altland does not allege that these defendants provided him with medical care, refused to provide medical care, or prevented him from receiving medical care; nor does Altland assert that these defendants were aware of or acquiesced in purported

---

[4] Defendant Angelici is purportedly being sued based on his role as a supervisor, i.e., Chief of Dentistry for the Department of Corrections.

Eighth Amendment violations by prison staff. Notably, Altland acknowledges that he is suing defendant Wetzel because he is "legally responsible for the overall operations of the Department [of Corrections] and each Institution under its jurisdiction." (Doc. 1 at ¶ 4). Likewise, he is suing defendant Lamas because she was "responsible for the operation of S.C.I. Benner Township." (Id. at ¶ 5). Altland's complaint is, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold these defendants liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Accordingly, Altland's deliberate indifference claim against defendants Wetzel, Lamas, Bopp, and Angelici, to the extent it relies on a *respondeat superior* theory of liability, will be dismissed.

To the extent that Altland attempts to hold these defendants liable based on their involvement in the grievance procedure, this claim must also be dismissed. The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Thus, to the extent that defendants are sued in their capacity for denying Altland's grievance and appeals, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability); Cole v. Sobina, No, 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

### 4.    *Official Capacity*

Lastly, the corrections defendants seek dismissal of the complaint against them in their official capacity. (Doc. 18 at 13-14). Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. Id.; see also Monell, 436 U.S. at 690 n. 55. When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought. Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974). Congress has not abrogated the immunity regarding Altland's claims, nor has Pennsylvania waived this grant of immunity. See 42 Pa.C.S.A. § 8521(b). Consequently, Altland's claims for money damages against the defendants in their official capacity are barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

### B.     Medical Defendants' Motion to Dismiss

Defendants Dancha, Leahy, and Dunkle argue that Altland fails to allege any facts which could support a claim that they acted with deliberate indifference to his medical needs.  (Doc. 27 at 8-17).  As stated *supra*, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  Rouse, 182 F.3d at 197.  In the context of medical care, the relevant inquiry is whether the defendant was deliberately indifferent to the plaintiff's serious medical needs.  See Monmouth Cty., 834 F.2d at 346.

The allegations in Altland's complaint clearly demonstrate that he received medical attention while incarcerated at SCI-Benner Township, and that the attention he received lacks the requisite deliberate indifference to support a § 1983 claim.  In his complaint, Altland does not state facts demonstrating that defendants denied him medical treatment.  To the contrary, Altland acknowledges that he did receive extensive medical care at SCI-Benner Township.  In their brief, the medical defendants highlight Altland's admissions of the medical care he received while incarcerated, *to wit*:

| | |
|---|---|
| 8/20/13 | Surgery with Dr. Kaczor |
| 8/23/13 | Seen by the dental hygienist |
| 8/26/13 | Seen by the dental hygienist |
| 8/28/13 | Seen by the dentist Seen by medical secondary to lip numbness, further evaluation ordered |
| 8/29/13 | Seen by the dental hygienist[] |
| 9/2/13 | Seen by the medical department for complaints of pain |
| 9/3/13 | Seen by the dental hygienist |
| 9/4/13 | Seen by the dentist and X-rays taken to rule out fracture |

| | |
|---|---|
| 9/6/13 | Seen by Dr. Dancha (at Dr. Dancha's initiative per Complaint) to discuss Plaintiff's new facial symptoms and to discuss possible causes for the same, including Bell[']s Palsy |
| 9/7/13 | Seen by the dental hygienist and oral surgeon |
| 9/12/13 | Seen by Dr. Dancha to discuss his desire to send Plaintiff to a neurologist to determine the etiology of Plaintiff's symptoms |
| 9/18/13 | Seen by Dr. Kaczor |
| 9/19/13 | Seen by the dental hygienist |
| 11/7/13 | Seen by the neurologist who confirmed diagnosis of dental nerve injury 11/9/13 Seen by Dr. Dancha to review neurologist's findings and recommendations 12/10/13 Seen by Dr. Dancha to discuss medication adjustments and to discuss care going forward |
| 12/23/13 | Seen by the medical department secondary to ear pain |
| 1/2/14 | Seen by the medical department secondary to ear pain |
| 1/9/14 | Seen by the medical department secondary to ear pain |
| *(January, 2014-March, 2014: In York County for Court)* | |
| 3/3/14 | Seen by Dr. Dole, wherein Plaintiff was placed on Tegratol for pain |
| 3/20/14 | Seen by the medical department for complaints of pain |
| 3/24/14 | Seen by Dr. Dancha, wherein Plaintiff was placed on Lyrica Unknown Seen by Dr. Dancha, who increased Plaintiff's Lyrica dosage to 200mg |
| 5/14/14 | Seen by Dr. Dancha, who advised Plaintiff that he needed to wait until June, 2014 to increase Plaintiff's Lyrica dose further |
| 6/1/14 | Seen by Dr. Dancha, who increased Plaintiff's Lyrica dosage to 300mg; advised Plaintiff that he was uncomfortable prescribing a Lyrica in excess of 300mg |

(Doc. 27 at 10-11).

It is clear that Altland received medical care at SCI-Benner Township. Altland's allegations amount to nothing more than his subjective disagreement with that medical care.

With respect to Altland's allegation that defendants Dancha, Leahy, and Dunkle failed to properly treat his nerve injury, the court finds that their actions do not amount to deliberate indifference to Altland's serious medical needs. Subsequent to Altland's wisdom tooth extraction, he developed several symptoms, including pain, facial drooping, lip and gum numbness, jaw pain, loss of motor skills, and disfigurement. (Doc. 1 at ¶¶ 18, 25-31, 35, 46). Upon evaluation of these symptoms, Dr. Dancha ordered HIV and Lyme Disease testing, prescribed antibiotics, steroids, and pain medication, consulted with an oral surgeon, referred Altland to a neurologist outside the prison for further evaluation, and referred him to a psychiatrist. (Id. at ¶¶ 35, 36, 38, 53). Dr. Dancha presumably ordered these various tests, prescribed medications, and referred Altland to specialists in an attempt to properly diagnose and treat him. Moreover, Altland acknowledges that on at least one (1) occasion, Dr. Dancha summoned him to the medical department on his own volition. (Id. at ¶ 35). As to Altland's allegation that Dr. Dancha failed to order an MRI because it would be ineffective, the court will not second guess the decision of a medical professional. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment."). The factual allegations in the complaint reveal that Altland was adequately treated for his nerve pain and

received continuous medical treatment for his symptoms. Although Altland may not be wholly satisfied with the treatment he received at SCI-Benner Township, Dr. Dancha's actions do not amount to deliberate indifference to a serious medical need. See, e.g., Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997) ("[T]he exercise by a doctor of his professional judgment is never deliberate indifference.").

Regarding Altland's allegation that the medical defendants failed to properly treat his ear pain, this claim fails to demonstrate that defendants acted with deliberate indifference. Altland initially complained of ear pain and hearing loss in December 2013, and was promptly treated by a physician's assistant.[5] (Id. at ¶ 55). The physician's assistant believed that Altland suffered from an ear infection and, accordingly, prescribed ear drops. (Id.) Altland was again treated for his ear infection on January 2, 2014 and, at this visit, the physician's assistant determined that the ear canal was not irritated and the infection was cleared. (Id. at ¶ 58). One week later, Altland was treated by physician's assistant, defendant Leahy, for his ear pain. (Id. at ¶¶ 59, 60). Upon examination, defendant Leahy opined that Altland's ear pain stemmed from a pulled muscle in his neck. (Id. at ¶ 60). She therefore instructed Altland to perform stretches to help ease the pain, continued his pain medication, and placed him on a medical lay-in for the remainder of that day. (Id.) At best, Plaintiff's allegations appear to be a disagreement with the diagnosis and treatment of his ear pain. His allegations do not establish that the

---

[5] Altland fails to identify the "physician's assistant", though the medical defendants assume that any reference to an unnamed physician's assistant is a reference to defendant Dunkle. (Doc. 27 at 13, n.2).

physician's assistants failed to treat his ear pain, or that they exhibited deliberate indifference to his ear pain.

With respect to Altland's allegation that Dr. Dancha failed to increase the dosage of his pain medication, this claim must likewise be dismissed. Altland's allegations do not demonstrate that he was denied pain medication. Rather, he expresses dissatisfaction with the type and dosage of pain medication prescribed to him. The complaint reveals that Altland was initially prescribed Motrin 600mg for pain after his dental surgery. (Id. at ¶ 18). Altland was subsequently prescribed Tylenol 3 for his pain. (Id. at ¶ 45). Altland was then placed on Neurontin while temporarily housed at the York County Prison. (Id. at ¶ 62). Upon his return to SCI-Benner Township, Altland was prescribed Tegratol. (Id. at ¶ 64). After expressing dissatisfaction with Tegratol, Altland's medication was changed to Lyrica 100mg. (Id. at ¶ 68). Altland complained that this dosage did not provide prolonged relief. (Id. at ¶ 70). Therefore, Dr. Dancha increased the dosage of Lyrica to 200mg, and eventually 300mg. (Id. at ¶¶ 71-73). The medical defendants clearly did not refuse to provide Altland with pain medication. Altland's disagreement with the type and dosage of medication provided to him does not give rise to a constitutional violation. See, e.g., Gause v. Diguglielmo, 339 Fed. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); Rush v. Fischer, No. 09-9918, 2011 WL 6747392, at *3 (S.D.N.Y. 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs.").

While Altland may disagree with the treatment provided by the medical defendants, their treatment of him does not demonstrate deliberate indifference or unnecessary and wanton infliction of pain and does not amount to a constitutional violation.  Altland's allegations amount to nothing more than a subjective disagreement with the treatment decisions and medical judgment of the medical defendants.  See Carpenter v. Kloptoski, No. 08-2233, 2012 WL 983565, at *6 (M.D. Pa. 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference").  Claims of medical malpractice and disagreements as to the proper course of medical treatment simply do not suffice to satisfy the deliberate indifference standard.  See Monmouth Cty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper.  See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cty. Jail, 612 F.2d at 762).  Based on the foregoing, Altland's complaint fails to articulate a plausible civil rights claim against defendants Dancha, Leahy, and Dunkle.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."

<u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)).

The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). In the matter *sub judice*, the flaws in plaintiff's constitutional claims are both *legal* and *factual* and thus incurable; for this reason, the court concludes that curative amendment would be a futile endeavor.

## V.      <u>Federal Rule of Civil Procedure 4(m)</u>

Federal Rule of Civil Procedure 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants Dr. Joseph Kaczor and Dr. Dole have never been properly served in this case, nor have they had an attorney enter an appearance on his or her behalf. These defendants were named in the complaint filed on August 18, 2014. More than a year has passed since such time, and it appears that Altland has abandoned the action against these defendants. As a result, these non-served defendants will be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within 120 days of the date on which they were named as defendants in this case.

**VI.** **Conclusion**

For the reasons set forth above, defendants' motions (Docs. 17, 26) to dismiss

will be granted. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        September 18, 2015